IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
August 5, 2025 Session

## STATE OF TENNESSEE v. AARON JOSEPH COUVERTIER

**Appeal from the Circuit Court for Madison County**
No. 24-303    Joseph T. Howell, Judge
_____

### No. W2024-01526-CCA-R3-CD
_____

The Defendant, Aaron Joseph Couvertier, entered an open plea to one count of aggravated statutory rape, a Class D felony.  Following a sentencing hearing, the trial court denied the Defendant's request for judicial diversion and imposed a two-year sentence to be served in the Tennessee Department of Correction at 100 percent service.  The Defendant appeals, arguing that the trial court abused its discretion in denying judicial diversion.  After review, we affirm the decision of the trial court.

**Tenn R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Affirmed**

CAMILLE R. MCMULLEN, J., delivered the opinion of the court, in which KYLE A. HIXSON, and STEVEN W. SWORD, JJ., joined.

David W. Camp (on appeal) and Anna. B. Cash (at guilty plea and sentencing hearing), Jackson, Tennessee, for the appellant, Aaron Joseph Couvertier.

Jonathan Skrmetti, Attorney General and Reporter; G. Kirby May, Assistant Attorney General; Jody S. Pickens, District Attorney General; and Lee Sparks, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

On April 29, 2024, the Madison County Grand Jury indicted the Defendant for one count of aggravated statutory rape.  On July 8, 2024, the Defendant entered an open plea to the charged offense, with the trial court to determine the length and manner of his sentence following a hearing.

Prior to the sentencing hearing, the State filed notice indicating that its investigation revealed the Defendant had no prior criminal convictions.  A presentence report was prepared and entered as an exhibit at the sentencing hearing.  The report confirmed that the

Defendant had no prior criminal history, had served honorably in the U.S. Army from 2015 to 2022, and had been assigned a 100% disability rating upon discharge from the army. The Strong-R risk assessment tool indicated the Defendant was a low risk to reoffend.

The presentence report also included the victim's impact statement. In it, the victim stated that the Defendant exploited her role as his son's babysitter to initiate inappropriate contact with her. She said that the Defendant used her insecurities and youth against her and manipulated her into engaging in an inappropriate relationship with him. She explained that her religious beliefs, including her desire to remain a virgin, were minimized and discredited by the Defendant. She explained, "He lied to me, used me for what he wanted (my virginity) and wrecked my entire world." The victim asserted that the Defendant's actions caused her to have depression, thoughts of suicide, guilt, shame, unworthiness, anxiety, and Post-Traumatic Stress Disorder ("PTSD"). She stated that she had panic attacks, nightmares, and flashbacks, which were accompanied by physical symptoms of nausea, sweating, and a racing heart anytime she was reminded of the trauma. She expressed concern that the Defendant would exploit other young girls and requested that he be sentenced to incarceration. She also asked that the Defendant have no contact with her and that he be required to undergo mental health treatment.

The Defendant submitted several filings in support of his request for judicial diversion and/or probation, including a personal statement, letters of support, and medical records. In his personal statement, the Defendant discussed his personal history, medical issues, and efforts to seek help through counseling. He expressed remorse for his actions, apologizing to the victim, the victim's family, and his own family. The Defendant also detailed his diagnosis of Complex Regional Pain Syndrome—a permanent condition characterized by chronic pain and lasting nerve damage. He explained that this condition led to his medical retirement from the military, which resulted in the simultaneous loss of his health and the camaraderie of military life. He said his forced medical retirement left "a hole inside [him]" from which he had not recovered. The Defendant also reflected on the severity of his depression that led him to seek companionship with the seventeen-year-old victim, stating that it was so profound he "could not see that [his] actions were wrong."

The Defendant offered three letters of support to the trial court. His friend and pastor, who had known the Defendant for most of his life, emphasized that the Defendant was not a predator or a threat to youth, but rather a man who made a poor decision during a period of personal crisis. The pastor described the Defendant's proactive efforts to seek help, including reaching out to the Veterans Affairs' PTSD and anxiety rehabilitation centers for counseling and support.

The Defendant's mother submitted a letter detailing the Defendant's service to his country in the United States Army, both in the bomb disposal unit and as a nurse. She

asked the trial court for mercy in sentencing, given how the Defendant's sentence could affect the stability of his family.

An active-duty Non-Commissioned Officer who served alongside the Defendant in the army also submitted a letter of support. He discussed how the Defendant successfully attained his license as an LPN and consistently demonstrated leadership and dedication to his fellow soldiers. He described the Defendant as a devoted father and one of his closest friends, and he noted that the Defendant's rapid career changes, ongoing medical issues, multiple relocations across three states, and the loss of his strong support system had severely affected the Defendant as well as his family. He asserted that a sentence of confinement for the Defendant would negatively impact his children and his wife.

Additionally, the Defendant provided his medical records from Pathways of Tennessee Inc. These records indicated that the Defendant sought therapy and developed a personal safety plan after he was charged in this case. These records confirmed that the Defendant suffers from major depressive disorder, PTSD, and unspecified anxiety disorder. They also confirmed the Defendant is fully disabled and in chronic pain.

At the September 9, 2024 sentencing hearing, the State presented proof from the victim's mother, who provided her personal statement to the court. The victim's mother explained that her daughter, the victim, met the Defendant when she and her older sister began babysitting the Defendant's son. The victim eventually babysat exclusively for the family after the Defendant told her she made a better connection with his son. The victim's mother said her family later came to realize that it was not about who was the "better babysitter" or who had "the better connection with his child" but was about the victim being "the most suitable prey for a predator on the hunt." She described the negative emotional impact the offense had on her daughter and their entire family. She detailed the victim's mental health struggles, including thoughts of suicide, that the victim continued to experience as a result of the Defendant's conduct, and she explained that her other two daughters and husband had also sought therapy because of what had happened to the victim. She declared that the Defendant was "a sexual predator," characterizing him as "a grown man in his thirties" who manipulated her "naive seventeen-year-old" daughter. She noted that the Defendant now had two children and would likely need another babysitter in the future. She expressed deep concern that the Defendant posed an ongoing threat to others, particularly to families who might unknowingly trust him in the future. After citing statistics on how often sexual predators reoffend, the victim's mother asked the court to sentence the Defendant to confinement.

The Defendant offered testimony from Kamryn Couvertier, his wife, who requested a sentence of probation, emphasizing the Defendant's military service and the family's reliance on his veteran benefits. She said the Defendant had a very difficult childhood

where he was physically, emotionally, and mentally abused by his father. Her husband grew up in a single-parent household, one of five children, and was forced to work several jobs to support his family. Ms. Couvertier stated that the Defendant joined the United States Army in 2015, and while he was training to diffuse bombs, he sustained a severe injury. The Defendant was forced to change positions in the army, and he became a nurse. However, the Defendant later sustained another severe injury, which required him to have three surgeries and ultimately cost him his military career. She said that when the Defendant was forced to leave the army because of his injuries, he became very depressed and began seeing a therapist. Ms. Couvertier stated that in 2023 their family moved to Tennessee so she could take a job as a special agent forensic scientist with the Tennessee Bureau of Investigation. However, following the Defendant's indictment in this case, she was forced to resign from this position. She said her family relied on the Defendant's disability payment of $4,300 per month, which would be cancelled along with the Defendant's medical insurance if he were incarcerated. She stated that the Defendant's offense was completely out of character for him and that she believed it stemmed from the Defendant's continuing mental health struggles after being forced to leave the army. Ms. Couvertier said that since this case, the Defendant had sought therapy, and they were "trying to rebuild [their] lives" as best they could. She insisted that the Defendant would never commit an offense like this again and that he had never committed an offense like this before this case.

During the hearing, the trial court was presented with the TBI eligibility certificate, verifying that the Defendant was eligible for judicial diversion. Defense counsel asked that the trial court grant the Defendant judicial diversion. She emphasized the Defendant's lack of criminal history, his low risk of reoffending, his honorable military service, and his disability from his military service, arguing these factors favored judicial diversion. The State "absolutely oppose[d] diversion" based on the circumstances of the case, noting that the Defendant had "groom[ed]" the victim so he could "take her virginity."

At the conclusion of the sentencing hearing, the trial court reviewed the evidence presented, including the testimony of witnesses, the presentence report, letters of support, and the Defendant's personal statement. The court classified the Defendant as a Range I, standard offender, subject to a sentencing range of two to four years for the Class D felony offense. In determining the length and manner of service of the sentence, the trial court applied several enhancement factors pursuant to Tennessee Code Annotated section 40-35-114. First, it found the victim of the offense was vulnerable because of age and her mental condition. Tenn. Code Ann. § 40-35-114(4). It also determined that the offense involved a victim and was committed to gratify the Defendant's desire for pleasure and excitement. See id. § 40-35-114(7). In addition, it found that the Defendant had abused a position of private trust because the victim was the "family babysitter." See id. § 40-35-114(14). The trial court stated that it gave all three enhancement factors "great weight."

In determining whether any mitigating factors applied, the trial court acknowledged that the Defendant's criminal conduct neither caused nor threatened serious bodily injury but afforded this factor "light weight," given the emotional and psychological impact to the victim. See id. § 40-35-113. The court gave particular attention to the victim's impact statement and the testimony from the victim's mother, who described the victim's ongoing mental health struggles because of the Defendant's conduct.

The trial court also referenced a variety of additional considerations, which are reflected in the following excerpt from the sentencing record:

> The Court considers the presentence report.
>
> The Court considered the defendant's physical and mental condition and social history. Here, we've got a disabled veteran. Held to a higher standard, quite frankly.
>
> The Court considers the facts and circumstances surrounding the offense and the nature and the circumstances of the conduct involved. [The Court n]ote[s], according to the presentence report, [the Defendant] was asked about [this offense] by law enforcement, given an opportunity to come clean but did not do that.
>
> The Court notes he has no prior criminal history.
>
> The Court considers whether or not the interest of society and being protected from possible future criminal conduct of the defendant, whether or not a sentence of probation would unduly depreciate the seriousness of the offense, whether or not confinement is particularly suited to provide an effective deterrent to others committing serious similar offenses.
>
> I consider the testimony of [the victim's mother] as far as the impact on her family.
>
> This situation is not a situation where the defendant found himself in a moment of weakness, or spur of the moment. He essentially groomed the family babysitter, who was young and naive.
>
> Again, the Court takes no pleasure in this. [The defendant's] wife is here asking for probation because they can't survive financially without his benefits, which they would lose, but there's no one to blame but the defendant.

After considering these additional factors, the court stated, "I don't think diversion will be appropriate." The trial court then imposed a sentence of two years in the Tennessee

- 5 -

Department of Correction, to be served at 100 percent as required by statute. The court also recommended the Defendant for special needs services, ordered him to comply with the Tennessee Sex Offender Registry, and ordered him to have no contact with the victim and the victim's family. Thereafter, the Defendant filed a timely appeal.

## ANALYSIS

The sole issue on appeal is whether the trial court erred in denying the Defendant's request for judicial diversion following his open plea to aggravated statutory rape. The Defendant claims the trial court failed to properly consider, weigh, and make appropriate findings on the relevant factors when denying judicial diversion. Consequently, he urges this court either to conduct a de novo review and grant his diversion request or to remand his case for reconsideration by the trial court. The State responds that while the trial court did not consider all the factors, it considered the relevant factors, which entitles the denial of judicial diversion to be afforded a presumption of reasonableness, and that the record supports the denial of diversion. Alternatively, the State contends that even if the trial court's findings are inadequate, a de novo review of the relevant factors supports the trial court's conclusion that the Defendant is a poor candidate for judicial diversion. After reviewing the record and applicable law, we conclude that the trial court did not adequately articulate its reasoning in accordance with the established legal standards governing judicial diversion. However, because both the record and the trial court's factual findings are sufficient for us to conduct a de novo review, we conclude that the trial court properly denied judicial diversion in this case.

"[T]he abuse of discretion standard accompanied by a presumption of reasonableness applies to all sentencing decisions, including the grant or denial of judicial diversion, when the trial court properly supports its decision on the record in accordance with the purposes and principles of sentencing." State v. King, 432 S.W.3d 316, 329 (Tenn. 2014). In determining whether the trial court abused its discretion in granting or denying judicial diversion, the appellate court must ask whether there is "any substantial evidence" to support the trial court's decision. Id. at 326.

The Tennessee Supreme Court has described judicial diversion as a "legislative largess" available to qualified defendants. State v. Schindler, 986 S.W.2d 209, 211 (Tenn. 1999). Under the judicial diversion statute, if a qualified defendant is guilty of an offense that is otherwise eligible for diversion, then the guilty plea or verdict is "held in abeyance" and "further proceedings are deferred under reasonable conditions during a probationary period established by the trial court." Rodriguez v. State, 437 S.W.3d 450, 455 (Tenn. 2014) (citing Tenn. Code Ann. § 40-35-313(a)(1)(A)); see State v. Dycus, 456 S.W.3d 918, 925 (Tenn. 2015). A trial court may order judicial diversion for qualified defendants who are found guilty or have entered a guilty or nolo contendere plea to a Class C, D, or E

felony or a lesser crime; have not previously been convicted of a felony or Class A misdemeanor; have not previously been granted judicial diversion or pretrial diversion; and are not seeking deferral for a specified sexual offense, for driving under the influence of an intoxicant, for vehicular assault prior to the service of the minimum sentence, or for other enumerated crimes against the elderly or vulnerable adults. Tenn. Code Ann. § 40-35-313(a)(1)(B)(i).

Here, it is undisputed that the Defendant is eligible to receive judicial diversion because his offense of aggravated statutory rape is not classified as a sexual offense for the purposes of judicial diversion. See id. § 40-35-313(a)(1)(B)(ii). However, a defendant's statutory eligibility for judicial diversion does not "constitute entitlement to judicial diversion." King, 432 S.W.3d at 323. "[I]nstead, the decision of whether to grant or deny judicial diversion is entrusted to the discretion of the trial court." Id. (citing Tenn. Code Ann. § 40-35-313(a)(1)(A)) ("The court may defer proceedings against a qualified defendant . . . ." (emphasis added)).

The trial court must consider the following factors in determining whether a qualified defendant should be granted judicial diversion: (1) the defendant's amenability to correction; (2) the circumstances of the offense; (3) the defendant's criminal record; (4) the defendant's social history; (5) the defendant's physical and mental health; (6) the deterrence value to the defendant and others; and (7) whether judicial diversion will serve the ends of justice—the interests of the public as well as the defendant. State v. Electroplating, 990 S.W.2d 211, 229 (Tenn. Crim. App. 1998) (citing State v. Parker, 932 S.W.2d 945, 958 (Tenn. Crim. App. 1996)); see King, 432 S.W.3d at 326 (asserting that "Bise, Caudle, and Pollard did not abrogate the requirements set forth in Parker and Electroplating, which are essential considerations for judicial diversion"). The trial court may also consider "'the applicant's attitude, behavior since arrest, prior record, home environment, current drug usage, emotional stability, past employment, general reputation, marital stability, family responsibility and attitude of law enforcement.'" State v. Washington, 866 S.W.2d 950, 951 (Tenn. 1993) (quoting State v. Markham, 755 S.W.2d 850, 852-53 (Tenn. Crim. App. 1988) (citations omitted)). "[T]he trial court must weigh the factors against each other and place an explanation of its ruling on the record." King, 432 S.W.3d at 326 (citing Electroplating, 990 S.W.2d at 229).

Under the Bise standard of review, when the trial court "considers the Parker and Electroplating factors, specifically identifies the relevant factors, and places on the record its reasons for granting or denying judicial diversion," this court "must apply a presumption of reasonableness and uphold the grant or denial so long as there is any substantial evidence to support the trial court's decision." Id. at 327. "Substantial evidence" is "[e]vidence that a reasonable mind could accept as adequate to support a conclusion; evidence beyond a scintilla." Black's Law Dictionary 640 (12th ed. 2024).

While the trial court is "not required to recite all of the Parker and Electroplating factors when justifying its decision on the record in order to obtain the presumption of reasonableness[,]" the record should reflect that the court "considered the Parker and Electroplating factors in rendering its decision and that it identified the specific factors applicable to the case before it." King, 432 S.W.3d at 327. "Thereafter, the trial court may proceed to solely address the relevant factors." Id.

However, if the trial court "fails to consider and weigh" the Parker and Electroplating factors, "the presumption of reasonableness does not apply[,] and the abuse of discretion standard, which merely looks for 'any substantial evidence' to support the trial court's decision, is not appropriate." Id. (citing State v. Pollard, 432 S.W.3d 851, 863-64 (Tenn. 2013)). In such a scenario, the reviewing court "may either conduct a de novo review or, if more appropriate under the circumstances, remand the issue for reconsideration." Id. at 328. "Relevant considerations" when making this determination "include the adequacy of the record, the fact-intensive nature of the inquiry, and the ability of the court to request supplementation of the record." Id. (citing Pollard, 432 S.W.3d at 864 (remanding based on the fact-intensive nature of the inquiry); State v. Bise, 380 S.W.3d 682, 705 n.41 (Tenn. 2012) (recognizing that remanding for reconsideration is more appropriate when the trial court fails altogether to articulate the reasons for its sentencing decision); State v. Caudle, 388 S.W.3d 273, 279-80 (Tenn. 2012) (conducting a de novo review after requesting a supplementation of the record); see also Electroplating, 990 S.W.2d at 229-30 (conducting a de novo review when the trial court failed to provide an adequate explanation for denying the request for judicial diversion).

Here, the State argues that because the trial court considered the relevant Parker and Electroplating factors in denying judicial diversion, its decision should be afforded a presumption of reasonableness, and the trial court's denial of diversion should be affirmed because the record supports the denial. Alternatively, the State contends that if the trial court's findings are deemed inadequate, a de novo review of the relevant factors supports the trial court's conclusion that the Defendant is a poor candidate for judicial diversion. The State adds that the trial court's findings on probation suitability are equally applicable to judicial diversion.

In this case, although the trial court made some findings relevant to both the probation and judicial diversion determination, the court failed to distinctly identify, weigh, and make appropriate findings on the Parker and Electroplating factors specific to its judicial diversion decision. We reiterate that a trial court's findings are insufficient when it fails to consider the relevant factors for judicial diversion and when it fails to weigh these factors. Id. at 327.

Because the trial court in the Defendant's case did not properly identify the Parker and Electroplating factors, weigh these factors, or make sufficient findings as to why it was denying judicial diversion, the presumption of reasonableness does not apply to the trial court's decision, and the abuse of discretion is not appropriate. Id. at 327. Accordingly, we must either conduct a de novo review to determine whether adequate grounds for the denial of judicial diversion exists or remand the case for the trial court to consider the relevant factors concerning judicial diversion. Id. at 328.

In the Defendant's case, the facts are undisputed, and the record contains the transcript of the plea submission hearing and sentencing hearing as well as the exhibits that were presented on the issue of judicial diversion. Accordingly, we conclude that the circumstances in this case are appropriate for this court to conduct a de novo review of the Parker and Electroplating factors, rather than remanding the case to the trial court for reconsideration. See id.; State v. Eakes, No. M2022-01275-CCA-R3-CD, 2023 WL 5605636, at *9-10 (Tenn. Crim. App. Aug. 30, 2023); State v. Horn, No. M2022-00615-CCA-R3-CD, 2023 WL 4624495, at *8-10 (Tenn. Crim. App. July 19, 2023); State v. Sheets, No. M2022-00538-CCA-R3-CD, 2023 WL 2908652, at *5 (Tenn. Crim. App. Apr. 12, 2023); State v. Shaffer, No. E2017-02432-CCA-R3-CD, 2019 WL 328482, at *5-6 (Tenn. Crim. App. Jan. 24, 2019) (cases concluding that the record was sufficient for a de novo review of a trial court's denial of judicial diversion).

We will first consider the Defendant's amenability to correction. The record shows that when police initially gave the Defendant the opportunity to take responsibility for his conduct, the Defendant failed to do so. It is well established that a refusal to accept responsibility reflects negatively upon a defendant's amenability to correction for judicial diversion. State v. Denton, No. M2009-02546-CCA-R3-CD, 2010 WL 4069264, at *5 (Tenn. Crim. App. Oct. 19, 2010). In his letter to the court, the Defendant very briefly apologized to the victim before spending the remainder of his letter emphasizing the various circumstances that supposedly led to his conduct and the impact a conviction would have on his family. See State v. Hodges, No. M2016-01057-CCA-R3-CD, 2017 WL 3085434, at *5 (Tenn. Crim. App. July 20, 2017) (concluding that the defendant lacked remorse when she appeared more concerned about the effect of her actions on her family and herself rather than on the victim); State v. Oakes, No. E2006-01795-CCA-R3-CD, 2007 WL 2792934, at *9 (Tenn. Crim. App. Sept. 27, 2007) (concluding that the defendant lacked remorse when she prioritized her personal consequences over the impact to the victim and his family). In the Defendant's case, the victim's impact statement and proof provided by the victim's mother highlights the continuing emotional trauma experienced by the victim and her family because of the Defendant's criminal conduct. On the other hand, the record shows that the Defendant demonstrated a willingness to engage in therapy, developed a personal safety plan, and remained active in services provided through the Department of Veterans Affairs. In addition, the Defendant maintained a stable support

system, seemed to understand the need for his continued treatment, and was a low risk to reoffend. While the Defendant's efforts indicate a potential for rehabilitation, we give this factor neutral weight given the Defendant's failure to initially admit to his actions and his failure to fully express remorse for his egregious conduct.

When considering the factor regarding the circumstances of the offense, we recognize that the Defendant abused a position of trust by engaging in inappropriate conduct with his family's teenage babysitter. His actions reflect predatory behavior, a clear breach of familial and domestic trust, and a sustained intent to groom the victim. See State v. Anderson, 857 S.W.2d 571, 574 (Tenn. Crim. App. 1992) (concluding that the fact that a crime was planned can be considered in the circumstances surrounding an offense); State v. Doyle, No. W2012-02745-CCA-R3-CD, 2014 WL 217299, at *8 (Tenn. Crim. App. Jan. 17, 2014) (relying in part on the defendant's abuse of a position of public trust as a teacher at the sixteen-year-old victim's school when denying judicial diversion and probation for the statutory rape offense). This court has held that "the circumstances of the offense may alone serve as the basis for denial" of judicial diversion. State v. Kyte, 874 S.W.2d 631, 634 (Tenn. Crim. App. 1993). Moreover, we cannot ignore the victim's impact statement and the evidence provided by the victim's mother at sentencing, which show the full extent of the damage caused by the Defendant. See Sheets, 2023 WL 2908652, at *9 ("A trial court may also consider a victim impact statement as it reflects on the circumstances of the offense.") (internal quotation marks and citation omitted). Accordingly, we conclude that the circumstances of the Defendant's offense weigh heavily against the grant of judicial diversion.

Next, we must consider the Defendant's criminal history. The record clearly shows that the Defendant had no criminal history prior to committing the offense in this case. Therefore, we conclude that this factor weighs in favor of diversion.

As to the factor regarding the Defendant's social history, we note that in weighing this factor, a trial court may consider, among other things, the defendant's age, general reputation, education, employment, home environment, community involvement, and family relationships and responsibilities. King, 432 S.W.3d at 328; Washington, 866 S.W.2d at 951. "The law generally views these considerations as a proxy for stability to assess whether effective rehabilitation is likely." Sheets, 2023 WL 2908652, at *10. Here, the record contains numerous letters from friends and family attesting to the Defendant's good reputation and strong character. The Defendant's wife testified about his challenging upbringing and the significant physical and psychological impact of his military service, including three major surgeries and a difficult transition to civilian life. In addition, the victim and the victim's mother expressed great concern that the Defendant might reoffend because of his family's likely need for babysitters in the future. Because the Defendant's

social history contains both positive and negative elements, we consider this factor to be neutral in our determination regarding judicial diversion.

Regarding the factor concerning the Defendant's physical and mental health, the record reflects that he suffers from major depressive disorder, PTSD, and anxiety disorder, conditions at least in part attributable to his military service and related physical injuries. However, at the time of sentencing, the Defendant was engaged in counseling and treatment through the Department of Veterans Affairs. Accordingly, we give neutral weight to this factor.

We next consider the deterrence value of judicial diversion to both the Defendant and others. Although the Strong-R risk assessment tool categorized the Defendant as a low risk to reoffend, we feel the nature of the Defendant's offense—engaging in a sexual and exploitative relationship with a seventeen-year-old while in a position of trust— necessitates a sentence that provides both specific deterrence to the Defendant as well as general deterrence to the public. Accordingly, we conclude that this factor weighs heavily against the grant of judicial diversion.

Finally, we consider whether judicial diversion will serve the interests of the public as well as the defendant. A trial court may determine that diversion will advance the interests of a defendant "when a felony conviction may impair future employment" or when diversion is "necessary to avoid the stigma of a felony conviction." Id. at *12. However, the public's interests may not be served when "granting diversion would depreciate the seriousness of the offense, or where the collateral consequences of a conviction would protect the public[.]" Id. (internal citations omitted). Although the Defendant has taken steps toward rehabilitation and is supported by his wife, these considerations are far outweighed by the egregiousness of the Defendant's offense, the manipulative nature of his conduct, and the profound impact this offense had on the victim and her family. We also emphasize that the Defendant clearly abused a position of trust by committing the offense in this case. "The fact that the appellant violated a position of public trust bears directly on the public interest." State v. Houston, 900 S.W.2d 712, 715 (Tenn. Crim. App. 1995). Moreover, we recognize that a period of incarceration has the collateral benefit of separating the Defendant from the public, thereby preventing him from reoffending during that period. Because the interests of the public in punishing and deterring this sort of conduct greatly outweigh the Defendant's interests in receiving judicial diversion, we conclude that this factor weighs heavily against the grant of judicial diversion.

After conducting the de novo review, we conclude that the trial court properly denied judicial diversion. Although the Defendant did not have a criminal record prior to his guilty plea in this case, the factors concerning the circumstances of the offense, the deterrence value of judicial diversion to both the Defendant and others, and the interests of

the public as well as the defendant weigh heavily against granting judicial diversion to the Defendant.  Accordingly, we affirm the trial court's denial of judicial diversion.

## **CONCLUSION**

Because the factors disfavoring judicial diversion heavily outweigh the single factor favoring diversion, we affirm the judgment of the trial court.

s/ Camille R. McMullen
CAMILLE R. MCMULLEN, JUDGE